**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RAYMOND Q.,

                         Plaintiff,                      No. 5:18-CV-544
                                                       (FJS/CFH)

        v.

ANDREW SAUL,[1]

                         Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Office of John L. Bardsley               JOHN L. BARDSLEY, ESQ.
36 Main Street, P.O. Box 166
HSBC Bank Building, Second Floor
Cortland, New York 13045
Attorney for Plaintiff

Social Security Administration         FERGUS J. KAISER, ESQ.
Office of Regional General Counsel    Special Assistant U.S. Attorney
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

      Plaintiff Raymond Q. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his applications for disability insurance benefits and supplemental security

income ("SSI") benefits.  Dkt. No. 1 ("Compl.").  Plaintiff moves for remand for a further

_____

     [1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the defendant in this action.

hearing, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 11, 12.  For the following reasons, it is recommended that the determination of the Commissioner be affirmed.

## I. Background

Plaintiff was born in 1977, and completed tenth grade.  T. 44.[2]  At the time of the hearing, he lived with his wife and five children.  Id. at 45.  Plaintiff last worked sometime in 2014 for a week, but had to stop due to his back issues.  Id. at 46.  Prior to that, plaintiff worked as a manager at Advanced Stores Company delivering parts and "taking care of [ ] new products[.]"  Id. at 46.  In that role, plaintiff lifted up to 150 pounds.  Id.  Plaintiff also worked in home insulation, as a sawmill operator, and as a short order cook.  Id. at 47-48.

On December 16, 2016, plaintiff protectively filed a Title II application for disability insurance benefits.  T. 179.  That same day, plaintiff also protectively filed a Title XVI application for SSI benefits.  Id. at 183.  In both applications, plaintiff alleged a disability onset date of June 13, 2013.  The applications were denied initially on May 1, 2015.  Id. at 100.  Plaintiff requested a hearing, and a hearing was held on February 8, 2017 before Administrative Law Judge ("ALJ") Lisa B. Martin.  Id. at 39-77, 108-09.  On April 26, 2017, ALJ Martin rendered an unfavorable decision.  Id. at 17-29.  On March 13, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

findings the final determination of the Commissioner.  Id. at 1-5.  Plaintiff commenced this action on May 7, 2018.  See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

3

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence,

such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may

differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.

1992) (citation omitted).


### B. Determination of Disability

        "Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available

to him or her based on his or her age, education, and work experience.  Id. §

423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical

and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the

impairments is "based [upon] objective medical facts, diagnoses or medical opinions

inferable from the facts, subjective complaints of pain or disability, and educational

background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB),

2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d

4

1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

5

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 13, 2013, the alleged onset date.  T. 19.  The ALJ found at step two that plaintiff had the severe impairments of lumbar spine disorder with radiculopathy and spinal cord stimulator placement, bilateral elbow epicondylitis chronic pain, anxiety, and depression.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 20.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except [plaintiff] is limited to up to 5 hours of standing/walking, the rest sitting without limit, in an eight-hour workday. [Plaintiff] needs a chance to change positions as often as every 30 minutes for one to two minutes, and also have access to normal work breaks.  [Plaintiff] is precluded from all ladders, ropes, and scaffolds climbing, and is limited to occasional postural motions otherwise.  For the upper extremities, [plaintiff] is limited to frequent, but not constant reaching, handling, and finger tasks. [Plaintiff] is precluded from all exposure to dangerous work hazards, including unprotected heights and exposed moving machinery. He is limited to work that is detailed, but not complex, and does not requir[e] a fast assembly quota pace.

Id. at 22.  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  Id. at 27.  At step five, the ALJ determined that, after consulting with a vocational expert, and considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff

could perform.  Id. at 28.  Thus, the ALJ determined that plaintiff "ha[d] not been under

a disability, as defined in the Social Security Act, from June 13, 2013, through the date

of this decision."  Id. at 29.

### D. Arguments

Plaintiff argues that the ALJ's RFC determination was not supported by

substantial evidence.  Specifically, he contends that the ALJ erred in evaluating the

effectiveness of his spinal cord stimulator implant, and that plaintiff failed to prescribe

adequate weight to the opinions of plaintiff's treating physicians.  See Dkt. No. 11 at 16-

22.  Conversely, the Commissioner argues that the ALJ's RFC determination was

supported by substantial evidence.  Dkt. No. 12 at 8-13.

### E. Relevant Medical Evidence

### 1. Warren Wulff, M.D.

On August 31, 2016, Dr. Warren Wulff, plaintiff's orthopedic surgeon, completed

a medical source statement as to plaintiff's ability to do work-related activities.  T. 711-

16.  Dr. Wulff opined that plaintiff could continuously[3] lift up 10 pounds; occasionally[4] lift

11 to 20 pounds; and never lift 21 to 100 pounds.  Id. at 711.  He further indicated that

plaintiff could continuously carry up to 10 pounds; occasionally carry 11 to 20 pounds;

and never carry 21 to 100 pounds.  Id.  Dr. Wulff opined that plaintiff could sit for four

---

[3] "Continuously means more than two-thirds of the time.  T. 711.

[4] "Occasionally" means very little to one-third of the time.  T. 711.

hours, stand for two hours, and walk for one hour a day at one time without interruption. Id. at 712. He also indicated that plaintiff could sit for eight hours, stand for three hours, and walk for two hours total in an eight-hour workday. Id. Dr. Wulff noted that plaintiff did not require the use of a cane to ambulate. Id.

Dr. Wulff found that plaintiff could reach, handle, finger, feel, and push/pull continuously with both his left and right hands. T. 713. Plaintiff could also continuously operation foot controls with his left and right feet. Id. Plaintiff could occasionally climb stairs and ramps, balance, stoop, and kneel. Id. at 714. He could never climb ladders or scaffolds, crouch, or crawl. Id. As to environmental limitations, plaintiff could continuously tolerate humidity and wetness; dust, odors, fumes and pulmonary irritants; extreme cold; and extreme heat. Id. at 715. Plaintiff could occasionally tolerate moving mechanical parts; operating a motor vehicle; and vibrations. Id. He could never tolerate unprotected heights, and could tolerate very loud noise. Id. Dr. Wulff indicated that plaintiff could shop, travel without a companion for assistance, ambulate without assistive devices, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care of his personal hygiene, or handle papers/files. Id. at 716.

**2. Jacob Vella, M.D.**

Dr. Jacob Vella completed a medical source statement with respect to plaintiff's ability to do work-related activities. T. 734-39. Dr. Vella opined that plaintiff could

occasionally lifting less than 10 pounds; and never lift 11 pounds or more.  Id. at 734.
Plaintiff could carry 2 pounds of less, and never carry 11 pounds or more.  Id.  Dr. Vella
indicated that plaintiff would need to use a "straight cane" in order to carry.  Id.  Dr.
Vella opined that plaintiff could sit for five to ten minutes, stand for one hour, and walk
for twenty minutes at one time without interruption.  Id. at 735.  Plaintiff could sit for two
hours, stand for two hours, and walk for forty minutes total in an eight-hour work day.
Id. Dr. Vella noted that plaintiff should lie down with ice or heat.  Id.  Dr. Vella indicated
that plaintiff required the use of a cane to ambulate, and that he could ambulate less
than ten feet without his cane.  Id.  He indicated that plaintiff's cane was medically
necessary, and that without the cane, plaintiff could use his free hand to carry small
objects.  Id.

Dr. Vella indicated that plaintiff could occasionally handle, finger and feel with his
left and right hands.  T. 736.  Plaintiff could never reach or push/pull with his left or right
hands.  Id.  Plaintiff could occasionally operate foot controls with his left and right feet.
Id. Dr. Vella opined that plaintiff could never climb stairs and ramps, climb ladders or
scaffold, balance, stoop, kneel, crouch, or crawl.  Id. at 737.  Dr. Vella further indicated
that plaintiff could occasionally tolerate operating a motor vehicle; humidity and
wetness; dust, odors, fumes, and pulmonary irritants; and extreme heat.  Id. at 738.
Plaintiff could never tolerate unprotected heights, moving mechanical parts, extreme
cold, and vibrations.  Id.  Plaintiff could only tolerate moderate noise.  Id.  Dr. Vella
indicated that plaintiff could not shop, travel without a companion for assistance,
ambulate without using an assistive device, walk at a reasonable pace on rough or

9

uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, care for his personal hygiene, or handle papers/files.  Id. at 739.

### 3. Caryn Lindsay, Physical Therapist

On June 17, 2014, Ms. Caryn Lindsay, plaintiff's physical therapist, indicated that plaintiff could stand for two and a half hours consistently and four and a half hours with breaks; and sit for thirty minutes continuously and three hours with breaks.  T. 497. Plaintiff is unable to drive, but can walk for two hours continuously and three and a half hours with breaks.  Id.  She indicated that plaintiff could perform light work that consisted of "[f]requent lifting or carrying objects 0-10 lbs. and/or capacity to lift 20 lbs. maximum occasionally."  Id.  Ms. Lindsay noted that plaintiff could use both left and right hands for repetitive movement.  Id.  He could reach above shoulder level with both his left and right arms, but with increased symptoms.  Id. at 498.

### F. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding

11

plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the

consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

Plaintiff first argues that the ALJ erred in her determination that plaintiff's spinal cord stimulator implant was effective in relieving his pain.  Dkt. No. 11 at 16-18.  In assessing plaintiff's RFC, the ALJ stated that plaintiff "underwent spinal cord stimulator implantation in June 2014" and found that "the procedure was successful in reducing [plaintiff's] chronic pain."  T. 25.  The undersigned disagrees with this characterization. Plaintiff testified that the one-week trial stimulator "worked great," but that the actual implant had not "worked out to be as good as the trial" and that he benefitted "very little" overall from the permanent implant.  Id. at 49.  Plaintiff's testimony is consistent with his medical records.  The record demonstrates that at the beginning of the trial, plaintiff indicated that his pain level was a 6/10.  Id. at 583.  Plaintiff had the trial spinal cord stimulator removed on April 16, 2016, and categorized his pain level throughout the trial as a 0/10.  Id. at 584.  He stated that he was able to go out to dinner, walk, play outside with his daughter, and go fishing.  Id. Plaintiff indicated that had he did more in that week than he had done in years.  Id.

Plaintiff had the permanent implant placed in June 2014; he described the surgical procedure as "stressful."  T. 408.  He stated that his throat was injured with the tube placement, but that "over[]all he [was] doing better [and] his pain [was] less[.]"  Id. Thereafter, plaintiff's medical records demonstrate that he suffered steadily increasing pain in his back, and that the permanent implant needed to be reprogrammed numerous times.  At his July 23, 2014 appointment, plaintiff indicated that he had a

current pain level of 4/10, average pain level of 3/10, minimum pain level of 1/10, and maximum pain level of 7/10.  Id. at 402.  He further indicated that he felt like he needed adjustments to his implant.  Id.  On October 1, 2014, plaintiff rated his current pain level as 5/10, with an average pain level of 5/10, a minimum pain level of 0/10, and a maximum pain level of 8/10.  Id. at 396.  Plaintiff stated that he "continue[d] to have so much pain that he [was not] able to do anything like go up and down stairs or take care of [his] kids."  Id.  Plaintiff had his permanent implant reprogrammed.  Id. at 399.  On December 1, 2014, plaintiff rated his average pain level a 7/10, with a maximum pain level 10/10.  Id. at 391.  Plaintiff reported that the permanent implant was not working and was "shutting off constantly."  Id.  An increase in medication did not help reduce plaintiff's pain.  Id.

On April 27, 2015, plaintiff indicated that the spinal cord stimulator "representative" had helped his leg pain "a bit," but he was still having trouble sleeping with pain in his lower back and legs.  T. 549.  On August 18, 2015, plaintiff was seen for his low back and leg pain and stated that he was "just not doing better" and was "depressed and not able to do the things he want[ed] to do."  Id.  On October 21, 2015, the nurse practitioner indicated that plaintiff was "not doing any better."  Id. at 694.  He received "three more programs" in his implant after meeting with the representative.  Id. Plaintiff stated that he could not climb stairs, and that he "pa[id] for it" the next day if he tried.  Id. at 690-91.  On January 27, 2015, plaintiff stated that the implant was not helping his legs, but still provided relief.  Id. at 386.  He stated that he needed the device reprogrammed, and that his leg pain had increased in the last three months.  Id.

14

Dr. Vella ordered more tests as plaintiff stated that his symptoms are "much worse" since the initial injury. Id. at 389. Plaintiff's next six appointments yielded similar notations concerning plaintiff's continued pain. See 674, 678-79, 683-84, 752, 756, 758, 762, 767. As such, the ALJ's assessment that the spinal cord stimulator implantation successfully reduced plaintiff's pain is inconsistent with the abovementioned evidence, which demonstrates that plaintiff's severe pain persisted despite the implantation.

However, the undersigned finds that the ALJ's failure to properly assess plaintiff's pain associated with the permanent implant is harmless error because the RFC determination is supported by substantial evidence. The ALJ's conclusion that plaintiff could perform a full range of light work with certain limitations is consistent Dr. Wulff's opinion, which the ALJ gave "great weight" as it was "consistent with [plaintiff's] history of chronic musculoskeletal pain and conservative pain treatment." T. 22, 25. Dr. Wulff opined that plaintiff could continuously lift and carry up to 10 pounds; occasionally lift and carry up to 20 pounds; sit for four hours, stand for two hours, and walk for one hour a day at one time without interruption; and sit for eight hours, stand for three hours, and walk for two hours total in an eight-hour workday. Id. at 711, 712. Dr. Wulff further opined that plaintiff could reach, handle, finger, feel, and push/pull continuously with both his left and right hands; continuously operate foot controls with his left and right feet; and occasionally climb stairs and ramps, balance, stoop, and kneel. Id. at 713, 714. He indicated that plaintiff could perform his regular activities of daily living. Id. at 715. As the Commissioner notes, the ALJ's RFC determination is

"more restrictive than the limitations opined by Dr. Wulff."  Dkt. No. 12 at 10.

Dr. Wulff's opinion is also largely consistent with the opinion of plaintiff's physical therapist Caryn Lindsay, which the ALJ afforded "great weight" as it was consistent with plaintiff's "history of conservative pain treatment."  Ms. Lindsay found that plaintiff could stand for two and a half hours consistently and four-and-a-half hours with breaks; sit for thirty minutes continuously and three hours with breaks; walk for two hours continuously and three and a half hours with breaks; and could not drive.  T. 497.  She further indicated that plaintiff could perform light work that consisted of "[f]requent lifting or carrying objects 0-10 lbs. and/or capacity to lift 20 lbs. maximum occasionally"; use both left and right hands for repetitive movement; and  reach above shoulder level with both his left and right arms, but with increased symptoms.  Id. at 497-98.

To the extent that plaintiff argues that the ALJ erred in assigning "little weight" to Dr. Vella's medical opinion because it was "[in]consistent[5] with [plaintiff's] history of conservative treatment" and "heavily relied on [plaintiff's] subjective complaints," T. 26, the undersigned disagrees.  Insofar as plaintiff suggests that the ALJ improperly used "conservative treatment as the 'substantial evidence' to limit the weight afforded to" Dr. Vella's opinion, the undersigned notes that although an ALJ cannot discount a treating physician's opinion for recommending a conservative treatment regimen, see Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008), an ALJ could consider conservative treatment "in conjunction with other substantial evidence to help support a conclusion

---

[5] The ALJ wrote that "such severe limitations [were] consistent with [plaintiff's] history of conservative treatment," T. 26, but the undersigned agrees with plaintiff that this is likely a typographical error, see Dkt. No. 11 at 20-21.

that she was not disabled." Ortis Torres v. Colvin, 939 F. Supp. 2d 172, 183 (N.D.N.Y. 2013) (citing Burgess, 537 F.3d at 129).  In addition to her conclusion regarding plaintiff's relatively conservative treatment history for pain management, the ALJ found that Dr. Vella's medical opinion contradicted other medical opinions in the record, which "render[ed] it less severe." T. 26.  Indeed, Dr. Vella's medical opinion is inconsistent with the medical opinions of Dr. Wulff and Ms. Lindsay, which the ALJ afforded "great weight." See id. at 25, 26.  Further Dr. Vella's restrictive limitations are not supported by plaintiff's medical records, which, as the Commissioner notes, demonstrate that plaintiff's January 2015 nerve conduction study generated normal results; plaintiff's straight leg testing in January, February, April, and August 2015 were negative; and plaintiff's gait was, on occasion, described as normal or "moderately antalgic."  Dkt. No. 12 at 10 (citing T. 546, 551, 556, 561, 562, 594).

Moreover, the undersigned notes instances in the record where plaintiff's providers indicate that he was not following the prescribed treatment plan.  See T. 381 ("Patient currently does have a TENS unit for [his] condition and does NOT utilize it[.]"), 631 ("[D]oes not want to increase meds, has not been taking consistently. Enc to be compliant[.]"), 767 ("He did not meet with the [spinal cord stimulator] rep he was supposed to do this.").  In that vein, plaintiff argues that the ALJ improperly assessed that he "failed to comply with all available treatment measures." Dkt. No. 11 at 20. "Although an ALJ may properly consider a plaintiff's failure to follow treatment as prescribed, '[t]he law is clear, that an ALJ may not draw negative inferences from a claimant's lack of treatment without considering any explanations the claimant may

provide.'" Feliciano Velez v. Berryhill, No. 3:18-CV-01101 (SALM), 2019 WL 1468141, at *12 (D. Conn. Apr. 3, 2019) (quoting Campbell v. Astrue, 596 F. Supp. 2d 446, 454 (D. Conn. 2009)); see also Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (stating that the "ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." (citation and internal quotation marks omitted)).  Plaintiff argues that the ALJ's conclusion that plaintiff did not take his medications as prescribed is the "exception to the breadth of treatment options undertaken by plaintiff and his doctors" and that "it would [have been] more reliable for the ALJ to inquire as to why plaintiff 'had not been taking his medications' or as to why plaintiff 'reported not using his TENS unit.'" Dkt. No. 11 at 20 (citing T. 25).  First, insofar as plaintiff seems to suggest that the ALJ should have inquired as to why plaintiff had not been following his prescribed treatment regiment, it is well-settled that "[w]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).  The undersigned finds that the ALJ was not under an obligation to seek any further information as he had a complete record before him.  Second, to the extent that there is some indication in the record that plaintiff felt as though pain medications did not remedy his pain, see, e.g., T. 674 ("Ray does not think the methadone is helping

him that much still having a lot of left hip pain), it is unclear whether the ALJ considered that evidence in conjunction with her findings.  "Nevertheless, the ALJ's failure to consider plaintiff's explanation[ ] would be harmless error, as plaintiff's noncompliance was but one of several factors considered when assessing plaintiff's credibility." Gonzalez v. Berryhill, No. 3:17-CV-1385 (SALM), 2018 WL 3956495, at *15 (D. Conn. Aug. 17, 2018).

As such, "because the ALJ's consideration of plaintiff's non-compliance with treatment recommendations was but one factor in the ALJ's overall credibility determination," and because the undersigned ultimately concludes that the ALJ's decision was supported by substantial evidence, there is no reversible error.  Feliciano Velez, 2019 WL 1468141 at *12 (citing Schlichting, 11 F. Supp. 3d at 207 (ALJ committed harmless error where "[t]he reference to Plaintiff's failure to pursue treatment . . . was only part of the ALJ's credibility assessment."); Kuchenmeister v. Berryhill, No. 16-CV-7975 (HBP), 2018 WL 526547, at *19 (S.D.N.Y. Jan. 19, 2018) ("ALJ Katz's error was harmless. ALJ Katz's overall determination to discount plaintiff's subjective complaints is supported by substantial evidence, even if plaintiff's inconsistent attendance at therapy sessions is ignored.").

The ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational

probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). It is clear from the ALJ's overall decision that she appropriately considered the evidence before her, including the opinions of record and plaintiff's medical records.

As such, the Court's review of the ALJ's overall decision indicates that she properly reviewed the evidence of record and provided sufficient explanation for her analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence. Accordingly, it is recommended that plaintiff's motion be denied, and the Commissioner's motion be granted.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**RECOMMENDED**, that Raymond Q.'s motion (Dkt. No. 11) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.

      **IT IS SO ORDERED**.

    Dated: August 7, 2019
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

21